## Mary W. Weaver v. Fanny F. Weaver.

GIFTS—*Of Insurance Policies—Intention as Affecting the Question of Delivery.*—When the question arises as to whether there has been a gift of an insurance policy, the intent is of vital importance, and the crucial test is the intent with which an act or acts relied on as a substitute for actual delivery were done, and evidence as to what was said by the deceased at the time of the execution of an assignment of the policy is material and should be considered as tending to show the intention of the deceased and to explain possession by him of the policy and assignment subsequently.

**Bill of Interpleader.** Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1897. Reversed and remanded. Opinion filed January 27, 1898.

HOLDEN & BUZZELL, attorneys for appellant; WM. H. HOLDEN, of counsel.

The delivery of appellant's assignment was a valid and effectual delivery thereof. Fortescue v. Barnett, 3 Mylne & Keen, 41; Kerrigan v. Rautigan, 43 Conn. 23; Walker v. Walker, 42 Ill. 311; Bryan v. Wash, 2 Gilm. 557; Otis v. Beckwith, 49 Ill. 121.

The gift of the insurance money payable under the policy was irrevocable. Fortescue v. Barnett, 3 Mylne

& Keen, 41; Kerrigan v. Rautigan, 43 Conn. 23; Kellogg v. Adams, 51 Wis. 145; Miller v. Meers, 155 Ill. 298.

The evidence as to what was said by the deceased at the time he made the assignment to the appellant was proper, and should have been received by the court below as competent evidence to account for the failure of the appellant to prove her personal custody of the policy and the duplicate assignment thereof. Kellogg v. Adams, 51 Wis. 145.

The gift being evidenced by deed duly delivered to a third person, is complete. Fulton v. Fulton, 48 Barb. 590; Crabtree v. Crabtree, 159 Ill. 348; Miller v. Meers, 155 Ill. 294; Masterson v. Cheek, 23 Ill. 72; Knapstein v. Tinnette, 156 Ill. 324.

The only paper requiring a delivery to make it effectual was the assignment; a delivery of the policy would not pass any interest in it, and the assignment having been delivered, the possession afterward of a duplicate of it and of the policy by the assignor has no effect upon the operation of the assignment. Fulton v. Fulton, 48 Barb. 590.

The assignor of a chose in action, having delivered to the debtor a formal assignment of the same, has lost control of the same, and having put the chose in action beyond his control, has thereby duly delivered the assignment. Shults v. Shults, 159 Ill. 660; Williams v. Chamberlain, 165 Ill. 220.

The law presumes more in favor of the delivery of deeds, made in the course of voluntary settlements, than it does in ordinay cases of bargain and sale. Winterbottom v. Pattison, 152 Ill. 334.

To notify the debtor to a non-negotiable written contract in the manner made known by him as satisfactory, might, in the absence of the delivery of the assigned contract to the donee, well be regarded as

one of the most important steps in the transfer, in determining whether or not, by the acts of the parties, an equivalent of, or substitute for actual delivery appeared.    Williams v. Chamberlain, 165 Ill. 220.

ROGERS & MAHONEY, and FREDERICK A. WILLOUGHBY, attorneys for appellee.

Both the inchoate assignment to Mary W. Weaver and the perfected assignment to Fanny F. Weaver were purely voluntary—were mere gifts.    This being the case with the assignment to Mary W. Weaver, and such gift not having been completed, the assignor or donor, Edward L. Weaver, had the right to subsequently make an assignment or gift of the policy to Fanny F. Weaver.

It is essential to the validity of a gift that the donor must be competent to contract, there must be freedom of will, the gift must be complete with nothing left undone, the property must be delivered by the donor and accepted by the donee, and the gift must go into immediate and absolute effect.    Am. and Eng. Ency. of Law, 1313.

The gift must be completely executed.    If anything remains to be done to complete the gift, what is undone can not be enforced, it being without consideration. If left incomplete, there exists a *locus poenitentiae*, and what has been done may be reversed.    If not completed during the lifetime of the donor, his death revokes the part which has been performed.    It is therefore necessary to the validity of a gift, that the transaction be fully completed, that nothing essential remains undone.    Ibid.

An agreement to give without consideration, or for the consideration of love and affection only, transfers

no title to the property and does not give a right to sue
for damages, or to compel a completion of the agree-
ment.    It is a *nudum pactum*.    For this reason, a
promissory note, intended purely as a gift by the maker,
can not be enforced.   The expression of a promise to
make a gift for a specified benevolent object is not
binding unless the transfer is made and the gift com-
pleted.   This principle must not, however, be con-
founded with voluntary subscriptions for charitable
purposes, where the mutual promises of the several
subscribers are held to be sufficient consideration to
support an action to enforce the promise.   Ib. 1314.

Equity will not interfere to perfect a defective or im-
perfect gift, nor convert such a gift into a declaration
of trust merely on account of the imperfection.   Ib.
1314.

In order to complete the assignment or gift, delivery,
or that which is equivalent thereto, must be made.
Palmer v. Merrill, 6 Cush. 282; Lemon v. Phoenix M.
L. Ins. Co., 38 Conn. 294; Otis et al. v. Beckwith et
al., 49 Ill. 121; Williams, Adm'x, v. Chamberlain, 165
Ill. 210; Bristow v. Hall, 16 Tex. 566; Risley v. Phoe-
nix Bank, 83 N. Y. 318; Williams, Adm'r, v. Guile, 46
Hun. 645; Weber et al. v. Christen, 121 Ill. 91.

The appellant had no vested right in the policy—the
insured may change the beneficiary or assignee.   Mar-
tin v. Stubbings, 126 Ill. 387; Voigt v. Kersten, 164
Ill. 314.

The declarations of Weaver made at the time of
making the assignment to his mother are immaterial—
his other statements are merely hearsay.   Hearsay evi-
dence is incompetent to create or destroy title to prop-
erty.   Carter et ux. v. Buchanan, 9 Geo. 539; Robert-
son v. Crockett, 1 Yerg. (Tenn.) 203; Morton's Adm'r
v. Smith, 4 Monroe, 313; 1 Phillipp's Ev. 140, note 78.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

December 20, 1882, the Aetna Life Insurance Co. issued to Edward L. Weaver its policy of insurance for $2,000.00 on his life, and payable to his estate.

October 8, 1892, Weaver went with his brother-in-law, Edgar M. Snow, to the office of the agent of the company in Chicago, for the purpose, as he stated to Snow, of assigning said policy to his mother, the appellant. While Snow and Weaver were there together in this office, the latter having taken the policy with him, Snow also being present by appointment with Weaver, an assignment was written out in duplicate at his request, partly by a clerk and partly by a book-keeper in the employment of the company's agent, and signed by Weaver and acknowledged by him before a notary public. One duplicate was left by Weaver to be forwarded to the company's office, and it was produced on the trial from the possession of the company, by the attorney of the company. The other duplicate and the policy were taken by Weaver *to take care of for his mother.* What became of this latter duplicate assignment does not appear from the evidence, but the policy was kept by Weaver in his tin box where he kept his papers locked in his trunk, the key of which he carried himself. It was taken from the tin box in the trunk by Weaver's wife the day of his death, on May 9, 1896. What then occurred is told by the witness, Patrick I. Creedon, who testified as follows: "Went to see Ed. Weaver the evening of May 8, 1896. He requested me to get an assignment blank; I brought it to him the next day. He asked me to make them out to his wife Fannie; I did so, and he was raised up and wrote his name. I brought them to him; 'he was sinking bad.' He says, 'Give them to my wife,' so I gave the policy and the assignment blanks to his wife.

I attached the assignment to the policy. Not the way it is now. I pinned it to the policy. The delivery to Mrs. Weaver was in Mr. Weaver's bedroom.

"His wife obtained the policy before the assignment was made from a tin box which was in the trunk. He had the policy in his possession. He died the same day. There were two of the assignments. I requested them to take one down to the company and notify them that Mr. Weaver was dead."

Weaver lived about fifteen or twenty minutes after this assignment to his wife was made.

He was married to appellee, Fannie F. Weaver, December 16, 1891. His mother, the appellant, was sixty-four years of age in 1897. His father died October 2, 1882, a short time before the policy was issued. A suit at law was begun by appellee against the company, whereupon the company filed its bill of interpleader against appellant and appellee, setting up both said assignments, the respective claims of Weaver's wife and mother for the amount of the policy, admitting its liability on the policy to the beneficiary thereof, and praying that the claimants interplead. The amount of the policy, $2,000, was paid into court, and the answers of the defendants, by which they each claimed the fund, were decreed to be had and considered as interpleas, and the complainant was dismissed out of the case. After a hearing the court decreed that the assignment to appellant was null and void, that the assignment to appellee was valid, and that the clerk pay the money in court to appellee. From this decree appellant has appealed.

On the trial the court, on objection of appellee, ruled out all evidence as to what deceased said to the witness, Edgar M. Snow, at the office of the agent of the company when the assignment to appellant was made, con-

Weaver v. Weaver.

cerning what he, deceased, was going to do with the
policy and assignment to his mother.

On the trial, during the examination of the witness,
Edgar M. Snow, on behalf of appellant, the following
questions were asked and rulings made by the court
viz.:

"Q.   What did he say about what he should do
with it?

"A.   He directed me to tell his mother he was—

"Objected to by solicitors for Fannie F. Weaver;
objection sustained."

"Q.   What, if anything, did he say concerning the
assignment of the policy to his mother, and of the
possession of the policy by anybody for the benefit of
his mother?"

"Objected to by solicitors for Fannie F. Weaver;
objection sustained by the court."

"THE COURT:   You may state what you offer to
show."

"I offer to show that Mr. Weaver said that he was
glad that he had assigned it to his mother, and that he
had the policy and the assignment in his box for her."
(In 1893 or 1894.)

"THE COURT: The offer is objected to and the objec-
tion is sustained."

"To which ruling the solicitors for Mary W. Weaver
then and there duly excepted."

Also the following:

"Mrs. Edgar M. Snow, a witness called on behalf of
Mary W. Weaver, testified as follows:

"I am a sister of Edward L. Weaver."

"Q.   What did you ever hear your brother, the de-
ceased, say with regard to having assigned his life
insurance policy to his mother?"

"MR. WILLOUGHBY:   I object."

"THE COURT: The objection is sustained and the same offer as before."

"Mr. HOLDEN: We offer to prove that in 1893, in California, that Mr. Weaver said that he had assigned the policy to his mother, and also that he stated prior to the assignment that he took the insurance out originally for his mother, and that the assignment was in pursuance of his original intention in taking out the insurance."

"Objected to by counsel for Fannie F. Weaver; objection sustained by the court, and exception on behalf of Mary W. Weaver."

Mary W. Weaver, called in her own behalf, testified as follows: "I am the mother of Edward L. Weaver, deceased. I am sixty-nine years of age. I first knew of the policy in 1882, after my husband died. He told me that he had insured his life for $2,000."

"Q. Did he say any thing to you in regard to the persons for whose benefit he had insured his life?"

"Objected to on behalf of Fannie F. Weaver; objection sustained by the court, and exception on behalf of Mary W. Weaver."

"Q. Did your son say any thing to you after the date of the assignment about having assigned this insurance to you?"

"Objected to on behalf of Fannie F. Weaver; objection sustained, and exception taken."

"Q. Did your son ever tell you that this policy was on deposit with himself or anybody else for your benefit?"

"Objected to on behalf of Fannie F. Weaver; objection sustained, and exception on behalf of Mary W. Weaver."

"I knew after October, 1892, that my son Edward had the policy."

"Q.  Did your son Edward tell you after October 8, 1892, whether he was keeping this policy for himself or for you?"

"Objected to by counsel for Fannie F. Weaver; objection sustained by the court, and exception on behalf of Mary W. Weaver."

All the evidence thus ruled out by the court was material and proper for the consideration of the court, as tending to show what was Weaver's intention at the time he made the assignment to his mother, and to explain his possession and custody of the policy and assignment subsequently. It was part of the *res gestae*, and gives character to the acts of Weaver. It was proper also to show why appellant did not have their personal custody.  1 Greenl. on Evid., Secs. 108 and 109; 7 Am. and Eng. Ency. of Law, 52; 21 Id. 99 and 147; 1 Jones on Evid., Sec. 236; 1 Wharton on Evid., Secs. 258–9 and 262; Kellogg v. Adams, 51 Wis. 145; Amick v. Young, 69 Ill. 542.

In the Kellogg case, *supra*, the court, in speaking of similar evidence, said: "The testimony as to what was said by the plaintiff and her daughter Ida in respect to the gift and possession of the piano, was proper in connection with and as explaining their possession of the instrument, after its purchase by the mother and its gift to the daughter.  What is said by the person in possession of property, explanatory of such possession, is a part of the *res gestae*.  This is an elementary rule of evidence."

In Jones on Evid., Sec. 236, the author says: "When the statements of a party become relevant on other grounds, as when they form a part of the act or contract to be proven, or when they constitute a part of the *res gestae*, they are admissible whether favorable or unfavorable to his interest."

In the Amick case, *supra*, the court, speaking of

the declarations of a party, made while in possession of personal property, the title to which was being litigated, said: "Acts and declarations of a party in actual possession are not admitted on the theory that any peculiar credit is due to such party, but because they give character to the fact to be investigated."

In the following cases like evidence was admitted by the trial court, and considered by the Supreme Court in deciding the same, without passing on its admissibility directly, viz.: Martin v. Martin, 170 Ill. 21; Williams v. Evans, 154 Ill. 106; Rodemier v. Brown, 169 Ill. 353; Williams v. Chamberlain, 165 Ill. 214; Brower v. Callender, 105 Id. 94.

In the latter case, the declarations of a grantor made at the time a deed was being prepared, and when it was executed, its validity being in question, were discussed by the court, and held of great importance in determining that question.

Such evidence is held inadmissible when the deed has been shown clearly to have been executed and delivered. Williams case, *supra*; Massey v. Huntington, 118 Ill. 88; Dickie v. Carter, 42 Ill. 384; Francis v. Wilkinson, 147 Ill. 384.

But the rulings in these cases may be explained upon another well recognized principle of evidence, which excludes self serving statements.

It is claimed that this evidence was not material, and if material and admitted, could not effect the issue. To this we are not prepared to assent.

In the Williams-Chamberlain case, *supra*, where the question was as to whether there had been a gift of an insurance policy, the Supreme Court said: "Undoubtedly the intent is of vital importance, and as was said in Weber v. Christen, 121 Ill. 91, in reference to the delivery of a deed, 'the crucial test in all cases is the intent with which the act or acts relied on as an "equiv-

alent or substitute for actual delivery were done." In the same case the court further said: "By all the authorities, to make the gift a valid one, he should, if he retained the policy, have performed such other acts looking to the completion of the gift as in cases of actual delivery, as would, under the circumstances, *have been equivalent to* or *a substitute for such actual delivery.*"

So in Otis v. Beckwith, 49 Ill. 136, it was held that the acts and intentions of the donor relating to a gift of an insurance policy, were held to be of the greatest importance in determining whether there was a valid gift. Numerous other cases might be cited to the same effect, but it is unnecessary. As there was not a personal delivery of the policy in question to appellant, we regard it not only proper, but of the greatest importance in determining whether there was a completed gift by Weaver to his mother of the policy on October 8, 1892, for the court to hear and consider the evidence offered as to what Weaver said at the time he executed the assignment, both with reference to the assignment itself, and his retention of one of the duplicates and the policy, and also the evidence offered as to what he said subsequently as to the same matters. His possession of the policy was a continuing act, and his statements with reference to such possession were part of the *res gestae,* and would explain the character of his possession. This evidence might enable the court to determine with more certainty whether his acts, under all the circumstances shown, in making the assignment in duplicate, sending one to the company and retaining one with the policy, were intended by him, and were or were not, an equivalent or substitute for an actual delivery to his mother.

Also we regard it as a serious question if this excluded evidence would not, together with the acts of

Weaver with reference to the policy, establish a trust for his mother, he being the trustee. This, however, is a matter for future consideration in case of another trial. Lewin on Trusts, 68; Perry on Trusts, 86; Tyler v. Tyler, 25 Ill. App. 339; Grangiac v. Arden, 10 Johns. 293; Bunn v. Winthrop, 1 John. Ch. 336; Wheatley v. Purr, 1 Kean, 558, and cases cited in note (1); Meek v. Kettlewell, 1 Hare, 470; McFadden v. Jenkyns, Id., 460; Thorpe v. Owne, 5 Beavan, 224.

The contention of appellant, that the delivery of one of the duplicate assignments to the company, was of itself sufficient to make a completed gift to Weaver's mother, is a point for serious consideration, in view of the expressions of the Supreme Court in Otis v. Beckwith, 49 Ill. 134, viz.: "Here the policy was actually assigned, accepted in writing, and noted on the books of the company, all which we regard as equivalent to an actual delivery of the assignment to the complainant," in that case a trustee; also in Williams v. Chamberlain, 165 Ill. 220, viz.: "To notify the debtor party to a non-negotiable written contract in the manner made known by him as satisfactory, might, in the absence of the delivery of the assigned contract to the donee, well be regarded by a court of equity as one of the most important steps in the transfer in determining whether or not, by the acts of the parties, an equivalent of or substitute for actual delivery appeared."

In the case at bar, it appears from the policy, that in case of its assignment, it would be satisfactory to the company if it was made in writing, attached to the policy, and *a copy sent to the company*. The company finds no fault that the assignment was not attached to the policy—admits its liability to the real beneficiary, and it had notice by the duplicate sent it, of the mother's rights and Weaver's act, three and one-half

years before the subsequent assignment to the wife was attempted.

If the fact that this assignment to the mother being sent to the company, that being, as the Supreme Court say, "in the manner made known by him (it) as satisfactory," and also being, as the same court further say, "one of the most important steps in the transfer," were considered in connection with the evidence excluded by the court, (should that evidence be given as offered and in a manner to impress the court that it is to be believed), we are inclined to the opinion that the whole, taken together, would establish a perfected gift of the policy to the mother, and possibly a trust, she being the *cestui que trust* and Weaver her trustee.

While we are inclined to this view, we do not wish to be understood as holding that the execution and delivery of the duplicate assignment *to* the company was not sufficient of itself to complete the gift. We do not decide that question, and reverse and remand the cause for further proceedings, not inconsistent with the conclusions herein stated.

Reversed and remanded.